IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KENNETH WHITAKER, | : | CIVIL ACTION |
| | : | No. 16-2017 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| HERR FOODS, INC., | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    July 29, 2016


Plaintiff Kenneth Whitaker initiated this putative class action in the Pennsylvania Court of Common Pleas of Philadelphia County against Defendant Herr Foods, Inc. ("Defendant"). Plaintiff alleges that Defendant "misbranded" approximately one dozen snack food products--namely, chips and pretzels. Defendant removed this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). Defendant now moves to dismiss all of Plaintiff's claims, except for the breach of express warranty claim, and to strike the class allegations. For the reasons that follow, the Court will grant Defendant's motion to dismiss and deny Defendant's motion to strike. Therefore, only the breach of express warranty claim remains.

I.    **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Defendant is a Pennsylvania corporation that sells a variety of snack products. Compl. ¶¶ 6, 8, ECF No. 1. Plaintiff identifies at least twelve[1] of Defendant's products (hereinafter, "the products") bearing labels with the following statements: "No Preservatives," "No MSG," "All Natural," and "No Trans Fat." Id. ¶¶ 1, 8-9. These statements are also displayed on Defendant's website. Id. ¶ 9. According to Plaintiff, these statements are false, because many of the products' ingredients are, among other things, chemically synthesized and highly processed. Id. ¶¶ 3, 10 Plaintiff further alleges that the products' labels evade federal regulations, which oblige Defendant to disclose when its products contain certain ingredients. Id. ¶¶ 10-11, 14-15, 18, 21-23, 31-38, 44.

Plaintiff alleges that he prefers "healthy, wholesome, and nutritious" foods. Id. ¶ 50. He tries to avoid foods containing artificial or highly processed ingredients, chemical preservatives, and artificial flavors or colors. Id. Given these preferences, Plaintiff states that he purchased Defendant's products in reliance on their labels' representations that the

---

[1]    The identified products include three flavors of Herr's Popped Chips; Herr's All Natural Tortilla Chips; Herr's All Natural Sourdough Pretzels; five flavors of Herr's All Natural Potato Chips; and two flavors of Herr's Potato Chips. Compl. ¶ 1.

contents were natural and free of artificial or synthetic ingredients. Id. ¶¶ 51-52. He alleges that he also paid more money than he would have paid for other products containing artificial ingredients.[2] Id. ¶¶ 53-54.

Plaintiff filed the present action on behalf of himself and others similarly situated, based on Defendant's alleged (1) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. §§ 201-1 to 201-9; (2) breach of express warranty; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) breach of contract; and (6) unjust enrichment.

Plaintiff purports to represent the following putative class:

> All persons in the United States or, alternatively, Pennsylvania who purchased one or more of the Misbranded Products from six (6) years prior to the filing of the Complaint and continuing to the present.

Compl. ¶ 56. Plaintiff asserts that "the proposed class includes thousands if not millions of members." Id. ¶ 60.

## II. JURISDICTION

In its Notice of Removal, ECF No. 1, Defendant asserts that this Court has subject matter jurisdiction pursuant to

---

[2]     It is unclear whether Plaintiff consumed any of the products after he purchased them. But this factual gap is ultimately irrelevant to the resolution of Defendant's motion.

CAFA, 28 U.S.C. § 1332(d)(2). "CAFA confers on district courts original jurisdiction where: (1) the amount in controversy exceeds $5,000,000, as aggregated across all individual claims; (2) there are minimally diverse parties; and (3) the class consists of at least 100 or more members." <u>Neale v. Volvo Cars of N. Am., LLC</u>, 794 F.3d 353, 357 n.1 (3d Cir. 2015) (citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)).

Although the parties do not dispute jurisdiction under CAFA, the Court "must nevertheless satisfy [itself] that federal subject matter jurisdiction exists in the first instance." <u>Kaufman v. Allstate N.J. Ins. Co.</u>, 561 F.3d 144, 151 (3d Cir. 2009). "[T]he party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence." <u>Judon v. Travelers Prop. Cas. Co. of Am.</u>, 773 F.3d 495, 501 (3d Cir. 2014) (second alteration in original) (quoting <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936)). "Courts may consider pleadings as well as evidence that the parties submit to determine whether subject matter jurisdiction exists or an exception thereto applies." <u>Vodenichar v. Halcon Energy Props., Inc.</u>, 733 F.3d 497, 503 n.1 (3d Cir. 2013). Here, the three elements of CAFA jurisdiction are satisfied.

First, the amount in controversy exceeds $5,000,000. Plaintiff seeks damages equal to the amount that the putative class members paid for the products during the class period.

Compl. ¶¶ 82, 89, 96, 100. Defendant's Senior Vice President of Sales and Marketing avers that Defendant's aggregate sales revenues from the identified products during the class period was $407,903,654. Notice of Removal ¶¶ 17-18. Of those revenues, $213,026,510 was derived from sales to out-of-state customers. Id. ¶ 18.

Second, CAFA's diversity requirement is satisfied. Under CAFA, only minimal diversity is required for federal jurisdiction. 28 U.S.C. § 1332(d)(2)(A). CAFA's minimal diversity requirement is an exception to the "complete diversity" otherwise required under 28 U.S.C. § 1332(a). See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267-68 (1806). Under CAFA, "a federal court may exercise jurisdiction over a class action if 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 740 (2014) (quoting 18 U.S.C. § 1332(d)(2)(A)). The court looks to the "[c]itizenship of the members of the proposed plaintiff class[] . . . as of the date of filing of the complaint." 18 U.S.C. § 1332(d)(7).

Here, although the Complaint pleads that the named plaintiff is a "resident"[3] of Pennsylvania, the Complaint itself

_____

[3]      Plaintiff alleges that he is a "resident" of Pennsylvania. Compl. ¶¶ 7, 50. But the diversity requirement is

states that members of the proposed plaintiff class are "consumers throughout the United States who have purchased one or more of" the products at issue and amounts to "thousands if not millions of members." Id. ¶¶ 1, 56, 60. By contrast, Defendant is incorporated and has its principal place of business in Pennsylvania. Daryl Thomas aff. ¶¶ 21-23, Notice of Removal Ex. C. Therefore, the Court concludes that at least one member of the putative class is diverse from Defendant.

Third, the Complaint alleges that there are "thousands if not millions of members." Compl. ¶ 60; see Judon, 773 F.3d at 505 ("Because [the plaintiff] explicitly asserted in her complaint that there are 'hundreds of members,' [the defendant] was entitled to rely on this fact as an admission in favor of jurisdiction."). Therefore, the requirement that the class be composed of at least 100 members is satisfied.

Once CAFA's jurisdictional requirements are established by the party asserting federal jurisdiction--Defendant, in this case, due to removal--the burden shifts to the opponent--Plaintiff, in this case--to prove an exception to

one of citizenship. 28 U.S.C. § 1332(d)(2)(B). Residence is not equivalent to citizenship. Forman v. BRI CORP., 532 F. Supp. 49, 51 (E.D. Pa. 1982) ("[A]llegations of residency do not properly invoke [diversity] jurisdiction."). Nevertheless, this pleading deficiency is not fatal, because under CAFA, the court looks to the citizenship of any one member of the putative class, not solely the citizenship of the named plaintiff, to ensure that minimal diversity is satisfied.

jurisdiction. Kaufman, 561 F.3d at 154. Plaintiff does not oppose or otherwise address Defendant's removal pursuant to CAFA. Therefore, now satisfied that federal subject matter jurisdiction exists, the Court proceeds to analyze the substance of Defendants' motion.

## III. MOTION TO DISMISS

The Court first addresses Defendant's motion to dismiss Plaintiff's UTPCPL, fraudulent misrepresentation, negligent misrepresentation, breach of contract, unjust enrichment, and injunctive relief claims.

### A.   Legal Standard

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering such a motion, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (internal quotation marks removed). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

B.   Discussion

Defendant moves to dismiss various claims on the following grounds. It argues that (1) Plaintiff's UTPCPL, fraud, and negligent misrepresentation claims do not satisfy Rule 9(b)'s particular pleading requirements; (2) Plaintiff's breach of contract claim fails for lack of privity; (3) Plaintiff's UTPCPL, fraud, and negligent misrepresentation claims are barred by the economic loss doctrine; (4) Plaintiff's fraud and negligent misrepresentation claims are barred by the gist of the action doctrine; (5) Plaintiff fails to state a claim for unjust enrichment; and (6) Plaintiff lacks standing to seek injunctive relief. Each is addressed in turn.

1.   Rule 9(b)

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This pleadings standard applies to Plaintiff's fraudulent misrepresentation, UTPCPL, and negligent misrepresentation claims. See Travelers Indem. Co. v. Cephalon, Inc., 620 F. App'x 82, 85 n.3 (3d Cir. 2015) (nonprecedential) (explaining that where a plaintiff's negligent misrepresentation claim "alleg[es] fraudulent activity," it too "must be pled with sufficient particularity under Rule 9(b)"); Belmont v. MB Inv.

9

Partners, Inc., 708 F.3d 470, 498 n.33 (3d Cir. 2013)
(explaining that Rule 9(b)'s heightened pleading standard
applies when a claim under the UTPCPL is based on fraudulent
misrepresentations, but not when it is based upon other
conduct); Petruska v. Gannon Univ., 462 F.3d 294, 310 (3d Cir.
2006) (explaining that a state law fraudulent misrepresentation
claim must be pled with particularity under Rule 9(b)).

    To satisfy Rule 9(b)'s pleading requirements, a
plaintiff must "plead or allege the date, time and place of the
alleged fraud or otherwise inject precision or some measure of
substantiation into a fraud allegation." Frederico v. Home
Depot, 507 F.3d 188, 200 (3d Cir. 2007). "The purpose of Rule
9(b) is to provide a defendant with notice of the precise
misconduct with which he or she is charged and to prevent false
or unsubstantiated charges." Schmidt v. Ford Motor Co., 972 F.
Supp. 2d 712, 720 (E.D. Pa. 2013) (quoting Cooper v. Broadspire
Servs., Inc., No. 04-5289, 2005 WL 1712390, at *5 (E.D. Pa. July
20, 2005)); see also Travelers, 620 F. App'x at 85-86
(explaining that Rule 9(b)'s particularity is required "to place
the defendants on notice of the precise misconduct with which
they are charged, and to safeguard defendants against spurious
charges of immoral and fraudulent behavior").

    Here, Plaintiff sufficiently identifies the products
and alleged misrepresentations, thereby putting Defendant on

notice of its alleged wrongdoing. Plaintiff identifies (1) the
who: Herr Foods, Inc., Compl. ¶¶ 6, 8; (2) the what: labels
representing that twelve products are "All-Natural," and have
"No Preservatives," "No MSG," and "No Trans Fat," id. ¶¶ 1-2;
(3) the when: consumers selecting the products for purchase
between 2010 and the present, id. ¶ 56; (4) the where: the "the
front of the product labels" and Defendant's website, id. ¶ 2;
(5) the how: stating that the products were "All Natural," "No
Preservatives," "No MSG," and "No Trans Fat," which the consumer
believed to mean no synthetic and highly-processed ingredients,
chemical preservatives, artificial coloring or flavoring,
genetically modified material, or high levels of fat, id. ¶ 52;
and (6) the why: to induce consumers to purchase the products,
id. ¶¶ 71, 78. These allegations are sufficient to meet Rule
9(b)'s particularity standard. See, e.g., Ham v. Hain Celestial
Grp., Inc., 70 F. Supp. 3d 1188, 1194-95 (N.D. Cal. 2014)
(holding that the plaintiff's claims against a food manufacturer
for violations of consumer protection statutes, fraud, and
negligent misrepresentation satisfied Rule 9(b)).

        Contrary to Defendant's position, Plaintiff need not
specify the stores from which he bought the products to satisfy
Rule 9(b)'s pleading requirements. See, e.g., Smajlaj v.
Campbell Soup Co., 782 F. Supp. 2d 84, 104 (D.N.J. 2011)
(explaining that plaintiffs alleging fraudulent

misrepresentation by soup manufacturer need not specify either
the stores from which they bought the soups or the dates of
purchase). Based on Plaintiff's allegations, "Defendant[] cannot
persuasively argue that [it] lack[s] notice of the specific
conduct Plaintiff[] alleged was fraudulent, to whom the conduct
was directed, how the fraud was accomplished, and the reasons
behind the fraud. Rule 9(b) requires no more." In re Budeprion
XL Mktg. & Sales Litig., No. 09-md-2107, 2010 WL 2135625, at *16
(E.D. Pa. May 26, 2010).

### 2.   Breach of contract claim

Defendant next moves to dismiss Plaintiff's breach of
contract claim for lack of privity. According to Defendant,
"Plaintiff nowhere alleges that he purchased any product
directly from [Herr]," which "does not impact Plaintiff's breach
of express warranty claim"[4] but "should be fatal to his breach of
contract claim." Def.'s Mem. 22 (emphasis in original). The
Court agrees.

A breach of contract claim under Pennsylvania law
requires a plaintiff to establish "(1) the existence of a

---

[4]     The traditional requirement of contractual privity has
been eliminated with respect to breach of warranty claims for
consumer goods. See 13 Pa. Cons. Stat. § 2313 (explaining
creation of express warranties by affirmation, promise,
description or sample); Kassab v. Cent. Soya, 246 A.2d 848, 856
(Pa. 1968) (abolishing requirement of privity of contract in
warranty).

contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Omicron Sys., Inc. v. Weiner, 860 A.2d 554, 564 (Pa. Super. Ct. 2004).

Here, Plaintiff's breach of contract claim rests on the following allegations:

> 98.  Plaintiff and members of the class had a valid contract, supported by sufficient consideration, pursuant to which Defendant was obligated to provide all-natural products, without preservatives, trans-fat, or MSG, as applicable to the particular product, that did not contain any synthetic, artificial, highly processed ingredients, chemical preservatives, artificial flavors, or color additives.

> 99.  Defendant materially breached its contract with Plaintiff and members of the putative class by providing products that did not adhere to these promises.

> 100. As a result of Defendant's breach, Plaintiff and members of the putative class were damaged in that they received a product of less value than one for which they paid. Plaintiff and members of the class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to amounts paid for the Misbranded Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

Compl. ¶¶ 98-100.

Based on these allegations, the only discernable source of a "contract . . . pursuant to which Defendant was

13

obligated to provide all-natural products," id. ¶ 98, would be
the label characterizing the product as "all natural." It is
unclear whether a food product's label creates a contract
between the purchaser and the seller or manufacturer that would
permit a breach of contract claim to proceed separate from a
breach of warranty claim.[5] But the Court need not reach the
issue. In this case, even if the product's label could
constitute an agreement with clear and definite terms,
Plaintiff's breach of contract claim would fail because there is
no privity between Plaintiff and Defendant.

Pennsylvania law requires privity for a breach of
contract claim. Ill. Union Ins. Co. v. Hydro Int'l, PLC, 929 F.
Supp. 2d 365, 373 (M.D. Pa. 2013) (discussing Pennsylvania law);
Electron Energy Corp. v. Short, 597 A.2d 175, 177 (Pa. Super.
Ct. 1991) ("[I]t is fundamental contract law that one cannot be
liable for breach of contract unless one is a party to that
contract."). "Privity of contract exists when there is a
connection or relationship which exists between two or more

---

[5]     See, e.g., Kumar v. Salov N. Am. Corp., No. 14-2411,
2015 WL 457692, at *6 (N.D. Cal. Feb. 3, 2015) ("[The plaintiff]
cites to no case endorsing the view that statements on a product
label could constitute a contract."); Garrison v. Whole Foods
Mkt. Grp., Inc., No. 13-5222, 2014 WL 2451290, at *6 n.5 (N.D.
Cal. June 2, 2014) (declining to dismiss breach of contract
claim where privity argument was not raised, but noting that
"[i]t is not clear to the Court that the label on a food product
constitutes a contract between a purchaser and the manufacturer
of that product.").

14

contracting parties." <u>Travelers Indemnity Co. v. Mahiai</u>, 27 Pa. D&C 4th 34, 45 (Pa. Com. Pl. Ct. 2005).

Here, Plaintiff has not identified any contractual connection or relationship between the parties. Plaintiff does not allege that he purchased the allegedly mislabeled products directly from Defendant. Plaintiff only alleges only that he "purchased the Misbranded Products on many occasions," and "[b]efore purchasing the Misbranded Products, [he] read and relied on Defendant's labels." Compl. ¶ 51.

Furthermore, no exception to the privity requirement applies. Plaintiff does not allege the existence of an agency relationship or third-party beneficiary status. <u>See</u> <u>Robbins Motor Transp., Inc. v. Translink, Inc.</u>, No. 07-150, 2009 WL 803711, at *7-8 (E.D. Pa. Mar. 26, 2009) (discussing privity exceptions under Pennsylvania state law). Therefore, because there is no privity and no exception applies, Plaintiff's breach of contract claim will be dismissed.

### 3.   <u>Economic loss doctrine</u>

Defendant next argues that Plaintiff's UTPCPL, fraudulent misrepresentation, and negligent misrepresentation claims should be dismissed pursuant to the economic loss doctrine.

Pennsylvania's economic loss doctrine "provides that
no cause of action exists for negligence that results solely in
economic damages unaccompanied by physical or property damage."
Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162, 175
(3d Cir. 2008) (quoting Adams v. Copper Beach Townhome Cmtys.,
L.P., 816 A.2d 301, 305 (Pa. Super. Ct. 2003)). The economic
loss doctrine originated in the products liability context and
rests on the notion that "the need for a remedy in tort is
reduced when the only injury is to the product itself and 'the
product has not met the customer's expectations, or, in other
words, that the customer has received insufficient product
value.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir.
2002) (quoting E. River S.S. Corp. v. Transamerica Delaval,
Inc., 476 U.S. 858, 872 (1986)). Where the customer's injury is
"based upon and flow[s] from the purchaser's loss of the benefit
of his bargain and his disappointed expectations as to the
product he purchased," "the harm sought to be redressed is
precisely that which a warranty action does redress." REM Coal
Co. v. Clark Equip. Co., 563 A.2d 128, 129 (Pa. Super. Ct.
1989).

Here, Plaintiff claims simple economic loss. See
Compl. ¶¶ 82, 89, 96, 100. He does not allege that Defendant's
allegedly fraudulent labels caused any physical or property
damage. Therefore, Plaintiff's breach of warranty claim is

16

"specifically aimed at and perfectly suited" to address the economic relief Plaintiff seeks. REM Coal, 563 A.2d at 129.

But despite the general rule, there is some dispute as to the economic loss doctrine's applicability to Plaintiff's specific tort claims. As such, each must be individually analyzed.

> a. The economic loss doctrine and the UTPCPL claim

Whether the economic loss doctrine applies to a UTPCPL claim is an issue that has recently received significant attention by the district courts in this Circuit.

Predicting how the Pennsylvania Supreme Court would rule, the Third Circuit previously held that the economic loss doctrine applies to common law intentional and statutory fraud claims, including those brought under the UTPCPL. Werwinski, 286 F.3d at 681. In Werwinski, the Third Circuit noted that the Supreme Court of Pennsylvania had not addressed the economic loss doctrine's applicability to UTPCPL claims and recounted the doctrine's origins. Id. at 670-71. Adhering to the typical state law prediction framework, the court examined "(1) what the Pennsylvania Supreme Court has said in related areas; (2) the decisional law of the Pennsylvania intermediate courts; (3) federal appeals and district court cases interpreting state law; and (4) decisions from other jurisdictions that have

17

discussed the issues we face here." Id. at 675. Because there were no Pennsylvania Supreme Court or intermediate appellate court decisions addressing the issue, the Third Circuit looked to other jurisdictions for guidance. Id. at 675-76 (discussing cases from the Eleventh Circuit, Eighth Circuit, Seventh Circuit, District of Minnesota, Eastern District of Wisconsin, Michigan, and Florida). Ultimately, it predicted that the Pennsylvania Supreme Court would hold that the economic loss doctrine applies to UTPCPL claims. Id. at 681.

But after the Werwinski court's decision in 2002, the Superior Court of Pennsylvania in Knight v. Springfield Hyundai, 81 A.3d 940 (Pa. Super. Ct. 2013), held that the economic loss doctrine does not apply to statutory claims brought under the UTPCPL. Id. at 951-52. It summarily reasoned as follows:

> Our research reveals . . . that our Supreme Court has defined the economic loss doctrine as providing "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." The claims at issue in this case are statutory claims brought pursuant to the UTPCPL, and do not sound in negligence. Therefore, the economic loss doctrine is inapplicable and does not operate as a bar to [the plaintiff's] UTPCPL claims.

Id. at 951-52 (emphasis in original) (internal citations omitted) (internal footnote omitted).

Following Knight, a split ensued between the district courts in this Circuit as to whether the economic loss doctrine applies to UTPCPL claims pursuant to Werwinski or whether Knight

18

now controls. Compare McGuckin v. Allstate Fire & Cas. Ins. Co., 118 F. Supp. 3d 716, 720 (E.D. Pa. 2015) (collecting cases and concluding that "Werwinski's predication of the Pennsylvania Supreme Court's ruling on the economic loss doctrine remains binding on the district courts in this circuit until either the Pennsylvania Supreme Court or the Third Circuit rules otherwise"), with Kantor v. Hiko Energy, LLC, 100 F. Supp. 3d 421, 427-29 (E.D. Pa. 2015) (stating that "Werwinski no longer has any vitality" after Knight and holding that the economic loss doctrine does not apply to a UTPCPL claim). The split centers on the following issue of federal law: whether a district court sitting in diversity is bound by its federal court of appeals' previous prediction of unsettled state law when a state intermediate appellate court--not the state supreme court--later held to the contrary.

The Third Circuit has not directly addressed the issue and two primary approaches have emerged from the courts in this District.[6] Some courts have held that a district court is bound

---

[6]     Other circuits addressing the issue have held that the district court remains bound by the appellate court's prior prediction. See, e.g., Reiser v. Residential Funding Corp., 380 F.3d 1027, 1029 (7th Cir. 2004) ("[U]nder Erie our task in diversity litigation is to predict what the state's highest court will do. Once the state's highest court acts, the need for prediction is past. But decisions of intermediate state courts lack similar force; they, too, are just prognostications. They could in principle persuade [the Circuit] to reconsider and overrule [its] precedent; assuredly they do not themselves

by the Third Circuit's prediction unless the state intermediate court's subsequent decision indicates that the Third Circuit clearly "erred." See Maxwell Stepanuk, Jr., D.O., P.C. v. State Farm Mutual Auto. Ins. Co., No. 92-6095, 1995 WL 553010, at *2 (E.D. Pa. Sept. 19, 1995) (collecting cases and holding that a district court is bound by its court of appeals on questions of state law unless "later state court decisions indicate that the Court of Appeals' earlier prediction of state law was in error"); Largoza v. Gen. Elec. Co., 538 F. Supp. 1164, 1166 (E.D. Pa. 1982) ("[I]t is axiomatic that this court is bound by a decision of the Third Circuit predicting Pennsylvania law unless the state supreme court issues a contrary decision or it appears from a subsequent decision of the appellate courts that the court of appeals erred.").

---

liberate district judges from the force of [the Circuit's] decisions."); Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003) ("Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue."); see also Rutherford v. Columbia Gas, 575 F.3d 616, 619 (6th Cir. 2009) (citing Wankier for the same proposition); Jones-Hamilton Co. v. Beazer Materials & Servs., Inc., 973 F.2d 688, 696 n.4 (9th Cir. 1992) (explaining that the appellant "point[ing] to an additional intermediate appellate court decision on one side of a clear split . . . does not provide the kind of indication that our past interpretation of California law was incorrect that would cause us to revisit our holding").

Other courts have held that a district court is bound by the Third Circuit's prediction unless the state intermediate court's subsequent decision "contradicts" or is "inconsistent with" the Third Circuit's prediction. See, e.g., Golden Gate Nat'l Senior Care, LLC v. Beavens, 123 F. Supp. 3d 619, 630 n.6 (E.D. Pa. 2015) ("I will follow the Third Circuit's interpretation of Pennsylvania law unless it is inconsistent with a subsequent holding of the state Supreme or intermediate appellate courts."); Carrasquilla v. Mazda Motor Corp., 197 F. Supp. 2d 169, 173 (M.D. Pa. 2002) ("Presented with the [intermediate appellate] state court decision . . ., 'we will assume without deciding, that we are not strictly bound' by the Third Circuit's holding . . ., and are therefore, 'free to make a contrary prediction.'" (quoting Hittle v. Scripto-Tokai Corp., 166 F. Supp. 2d 159, 162 (M.D. Pa. 2001)).

But the answer is much simpler. Once a panel of the Third Circuit makes its prediction as to state law, a subsequent panel of the Third Circuit cannot overrule it. Debiec v. Cabot Corp., 352 F.3d 117, 131 (3d Cir. 2003). The prior prediction remains controlling upon a subsequent panel unless a U.S. Supreme Court decision requires modification or the Third Circuit sitting en banc overrules the prior decision.[7] See 3d

---

[7]    However, at least one Third Circuit panel has suggested a less deferential standard, stating that a showing of

Cir. Internal Operating Rule 9.1 (Aug. 1, 2011) ("It is the

tradition of this court that the holding of a panel in a

precedential opinion is binding on subsequent panels. Thus, no

subsequent panel overrules the holding in a precedential opinion

of a previous panel. Court en banc consideration is required to

do so."). The rule is intended to ensure the "integrity of [the

Third Circuit's] jurisprudence and the discharge of [its]

function in guiding and informing the district courts." <u>Dist.</u>

<u>Council 47, Am. Fed'n of State, Cty. & Mun. Emps., AFL-CIO by</u>

<u>Cronin v. Bradley</u>, 795 F.2d 310, 321 (3d Cir. 1986) (quoting

<u>Gluck v. United States</u>, 771 F.2d 750, 761 (3d Cir.1985) (Garth,

J., dissenting)).

    The Third Circuit's explanation in <u>Horsey v. Mack</u>

<u>Trucks, Inc.</u>, 882 F.2d 844 (3d Cir. 1989) directs this approach:

> Our Internal Operating Procedures, flatly
> prohibit a panel of this court from
> overruling a published opinion of a previous
> panel. Thus, unless the instant appeal may
> be distinguished from [the Court's previous
> decision] or until [the previous decision]
> is overruled by an <u>in banc</u> decision, [the
> previous decision] remains the law of this
> circuit; the district courts and this court
> are bound to its holding.

---

"persuasive evidence" that state law has changed could nullify
predictive precedents. <u>Robinson v. Jiffy Exec. Limousine Co.</u>, 4
F.3d 237, 240-42 (3d Cir. 1993) ("[W]hen we are applying state
law and there is persuasive evidence that it has undergone a
change, we are not bound by our previous panel decision if it
reflected our reliance on state law prior to its
modification.").

Id. at 846. Surely, a district court does not have the power to review a prior decision by a Third Circuit panel when a subsequent panel has no such power. Accordingly, "[i]t is axiomatic that if another panel of the Court of Appeals for the Third Circuit is bound by a previous panel's construction of state law then district courts within the Third Circuit are also bound by that construction."[8] Maxwell Stepanuk, 1995 WL 553010, at *2 (collecting cases).

Here, the Third Circuit has not questioned the propriety of its decision in Werwinski, and this Court will not usurp the Circuit's authority and do so itself.[9] Therefore, Plaintiff's UTPCPL claim will be dismissed pursuant to the economic loss doctrine because Plaintiff alleges only economic damages.

---

[8]    It is worth noting that, after Knight was decided, the Third Circuit, albeit in a nonprecedential opinion, relied upon its prior analysis in Werwinski to affirm the dismissal of a UTPCPL claim based on the economic loss doctrine. See Sunshine v. Reassure Am. Life Ins. Co., 515 F. App'x 140, 144-45 (3d Cir. 2013) (nonprecedential).

[9]    Practically speaking, even if the district court could evade the Third Circuit's earlier prediction, the district court would likely be reversed on appeal, because the panel hearing the appeal would be itself bound by the earlier prediction. Thus, the district court decision would be procedurally superfluous.

      b.    <u>The economic loss doctrine and common law</u>
               <u>fraudulent misrepresentation claim</u>

      The next issue is whether the economic loss doctrine
applies to Plaintiff's common law fraudulent misrepresentation
claim. "[I]ntentional misrepresentation claims are generally
preempted by the economic loss rule," but there is an oft-noted
exception where "a defendant committed fraud to induce another
to enter a contract." <u>Reilly Foam Corp. v. Rubbermaid Corp.</u>, 206
F. Supp. 2d 643, 658 (E.D. Pa. 2002) (citing <u>Werwinski</u>, 286 F.3d
at 676, 680-81). The exception recognizes that fraudulent
inducement claims are "much more likely to present cases in
which a social policy against the fraud, external to the
contractual obligations of the parties, exists." <u>Air Prods. &</u>
<u>Chems., Inc. v. Eaton Metal Prods. Co.</u>, 256 F. Supp. 2d 329, 341
(E.D. Pa. 2003). Therefore, a claim of fraudulent
misrepresentation "remain[s] viable" but "only when a party
makes a representation extraneous to the contract." <u>Reilly</u>, 206
F. Supp. 2d at 659.

      For example, a representation would be extraneous to a
contract or warranty if a company falsely misrepresented its
financial condition or its level of insurance coverage to induce
another company to enter into an agreement with it. <u>Werwinski</u>,
286 F.3d at 677 (citing <u>Rich Prods. Corp. v. Kemutec, Inc.</u>, 66
F. Supp. 2d 937, 979 (E.D. Wis. 1999)). Such a misrepresentation

might be relevant to a party determining whether to do business with another company, but it would "'not concern the underlying subject matter of the contract or a party's performance thereunder.'" Id. (citing Rich Prods., 66 F. Supp. 2d at 979). The economic loss doctrine would not bar the claim.

On the other hand, the economic loss doctrine would bar a fraudulent misrepresentation claim intrinsic to the contract or warranty claim. A fraudulent misrepresentation claim is intrinsic to the contract or warranty claim if the representations concern the specific subject matter of the contract or warranty, such as "the quality or characteristics of the goods sold." Air Prods. & Chems., 256 F. Supp. 2d at 337. A claim is also intrinsic if the representations concern a party's performance, such as allegations that the defendant "has not fulfilled its obligations under the . . . contract." Assurity Life Ins. Co. v. Nicholas, No. 14-6522, 2015 WL 5737397, at *4 (E.D. Pa. Oct. 1, 2015).

Here, Plaintiff's fraudulent misrepresentation claim is intrinsic to the contract and warranty claim because it relates to the quality and characteristics of the products purchased from Defendant. When purchasing a snack, Plaintiff presumably had a number of products from which to choose. In deciding, Plaintiff relied on Defendant's representation that its products were "All Natural." Am. Compl. ¶ 51. Plaintiff's

25

economic losses are therefore based on and flow from his loss of the benefit of his bargain and his disappointed expectations as to the products he purchased. This harm is precisely that which a warranty action seeks to redress.

Therefore, because Plaintiff's fraudulent misrepresentation claim concerns the quality and characteristics Defendant's products, the claim is intrinsic to the breach of warranty claim, and the economic loss doctrine applies. As such, Plaintiff's fraudulent misrepresentation claim will be dismissed.

### c.   The economic loss doctrine and the negligent misrepresentation claim

Application of the economic loss doctrine to the negligent representation claim is straightforward: "Plaintiff's negligent misrepresentation claim is quickly dispatched; the economic loss doctrine bars claims for negligent misrepresentation." Reilly, 206 F. Supp. 2d at 658. Although Plaintiff alleges that his claim falls within the exception recognized in Bilt-Rite Contractors, Inc. v. The Architectural Studio, 866 A.2d 270, 285 (Pa. 2005), he is incorrect.

The Bilt-Rite exception applies where a claim is based on the theory of negligent misrepresentation recognized in the Restatement (Second) of Torts § 552. Id. Section 552, titled "Information Negligently Supplied for the Guidance of Others,"

"sets forth the parameters of a duty owed when one supplies information to others, for one's own pecuniary gain, [and] where one intends or knows that the information will be used by others in the course of their own business activities." Id. at 285–86. The Supreme Court of Pennsylvania reasoned in Bilt-Rite that the doctrine does not bar § 552 claims because "economic losses are routinely allowed in tort actions in other contexts such as legal malpractice, accountant malpractice, and architect liability." Id. at 278-88.

Here, Defendant is not in the business of supplying professional information for pecuniary gain. Defendant manufactures and labels snack foods to be sold by third-party distributors to consumers like Plaintiff. The label, of course, supplies information to potential consumers; but the representations on a product's label made by a manufacturer materially differ from the professional representations made by an accountant, lawyer, or architect for pecuniary gain discussed in Bilt-Rite. See Elliott-Lewis Corp. v. Skanska USA Bldg., Inc., No. 14-3865, 2015 WL 4545362, at *5 (E.D. Pa. July 28, 2015) ("The sale of a product is fundamentally different than the sale of information, even if the seller provides information about the product to consummate the sale."). Any information conveyed to Plaintiff by the products' labels "was ancillary to" the products' sale. Slippery Rock Area Sch. Dist. v. Tremco,

Inc., No. 15-1020, 2016 WL 3198122, at *18 (W.D. Pa. June 9, 2016); see also Pannetta v. Milford Chrysler Sales Inc., No. 14-5680, 2015 WL 1296736, at *7 (E.D. Pa. Mar. 23, 2015) (holding that the economic loss doctrine barred a negligent misrepresentation claim against a car dealership that was not in the business of supplying information for pecuniary gain). Therefore, because the Bilt-Rite exception does not apply, Plaintiff's negligent misrepresentation claim will be dismissed pursuant to the economic loss doctrine.

### 4. Gist of the action doctrine

Defendant also moves to dismiss Plaintiff's fraudulent and negligent misrepresentation claims pursuant to the gist of the action doctrine, which "maintains the conceptual distinction between contract law and tort law." Gadley v. Ellis, No. 13-17, 2015 WL 2345619, at *6 (W.D. Pa. May 15, 2015). The gist of the action doctrine and economic loss doctrine are often used interchangeably. See Air Prods & Chem., 256 F. Supp. 2d at 340 (finding that the economic loss doctrine serves the same underlying purpose as the gist of the action doctrine); see also Pediatrix Screening, Inc. v. Telechem Int'l, Inc., 602 F.3d 541, 544 at n.5 (3d Cir. 2010) (noting that the parties referenced the gist of the action and economic loss doctrines interchangeably). But the doctrines are distinct: the economic

loss doctrine looks to the nature of the damages sought, whereas the gist of the action doctrine relies on the source of the parties' duties to one another.

Having decided that the economic loss doctrine bars Plaintiff's fraudulent and negligent misrepresentation claims, the Court need not address Defendant's arguments pursuant to the gist of the action doctrine. However, the Court notes that because the gist of the action doctrine applies "where the duties essentially flow from an agreement between the parties," "a party who was not in contractual privity with the plaintiff cannot invoke the gist of the action doctrine to foreclose tort claims against him or her." The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 WL 3427054, at *17 (E.D. Pa. Oct. 20, 2009); see also Centimark Corp. v. Pegnato & Pegnato Roof Mgmt., Inc., No. 05-708, 2008 WL 1995305, at *13-14 (W.D. Pa. May 6, 2008) (same). Here, as discussed supra, there is no contractual privity between Plaintiff and Defendant. Therefore, the gist of the action doctrine would not bar Plaintiff's claims.

### 5.   Unjust enrichment claim

The Court next addresses Plaintiff's unjust enrichment claim. To state a claim for unjust enrichment under Pennsylvania law, the plaintiff must allege that (1) he conferred a benefit on the defendant, (2) the defendant knew of the benefit and

accepted or retained it, and (3) it would be inequitable to
allow the defendant to keep the benefit without paying for it.
Mitchell v. Moore, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999).

Defendant argues that Plaintiff's unjust enrichment
claim should be dismissed because "[u]njust enrichment claims
are typically considered inappropriate in consumer product
cases." Def.'s Mot. 23-24. But no such categorical bar exists.

Unjust enrichment claims under Pennsylvania law appear
to fall into one of two categories: (1) a quasi-contract theory
of liability, in which case the unjust enrichment claim is
brought as an alternative to a breach of contract claim; or
(2) a theory based on unlawful or improper conduct established
by an underlying claim, such as fraud, in which case the unjust
enrichment claim is a companion to the underlying claim. See,
e.g., Zafarana v. Pfizer, Inc., 724 F. Supp. 2d 545, 561 (E.D.
Pa. 2010) (dismissing the plaintiff's unjust enrichment claim
because (1) the plaintiff did not allege that the defendant
refused to provide a service or good after securing a benefit,
and (2) the plaintiff did not "plead a separate tort, the
damages from which could be supported by a theory of unjust
enrichment"); Torchia v. Torchia, 499 A.2d 581, 582 (Pa. Super.
Ct. 1985) ("To sustain a claim of unjust enrichment, a claimant
must show that the party against whom recovery is sought either
'wrongfully secured or passively received a benefit that it

30

would be unconscionable for her to retain.'" (quoting Roman
Mosaic & Tile Co. v. Vollrath, 313 A.2d 305, 307 (Pa. Super. Ct.
1973) (emphasis added)). Under either theory, the requisite
circumstances exist to establish that the defendant has been
"unjustly enriched."

As to the first theory, an unjust enrichment claim
based on a theory of quasi-contract may be pled as an
alternative to a breach of contract claim. Lugo v. Farmers
Pride, Inc., 967 A.2d 963, 970 n.5 (Pa. Super. Ct. 2009). A
quasi-contract theory is "typically invoked . . . when [the]
plaintiff seeks to recover from [the] defendant for a benefit
conferred under an unconsummated or void contract." Steamfitters
Local Union No. 420 Welfare Fund v. Philip Morris, Inc., 171
F.3d 912, 936 (3d Cir. 1999). As such, the doctrine does not
apply where a written or express contract exists. Lackner v.
Glosser, 892 A.2d 21, 34 (Pa. Super. Ct. 2006) (citing Mitchell,
729 A.2d at 1203).

With respect to the second theory, an unjust
enrichment claim may be pled as a companion, not an alternative,
to a claim of unlawful or improper conduct as defined by law--
e.g., a tort claim. "In the tort setting, an unjust enrichment
claim is essentially another way of stating a traditional tort
claim (i.e., if defendant is permitted to keep the benefit of
his tortious conduct, he will be unjustly enriched)."

Steamfitters, 171 F.3d at 936. Where the unjust enrichment claim
rests on the same improper conduct as the underlying tort claim,
the unjust enrichment claim will rise or fall with the
underlying claim. Compare id. at 937 (dismissing the plaintiff's
unjust enrichment claim because it was based on the same
improper conduct as the plaintiff's traditional tort claims,
which were dismissed for lack of proximate cause), with Weiler
v. SmithKline Beecham Corp., 53 Pa. D. & C.4th 449, 466 (Pa.
Com. Pl. Ct. 2001) ("Because their tort counts have survived the
Objections, the Plaintiffs may proceed on their claim for unjust
enrichment."). In other words, unlike the quasi-contract theory
of unjust enrichment, which acts as an equitable stand-in for a
failed breach of contract claim, an unjust enrichment claim
based on wrongful conduct cannot stand alone as a substitute for
the failed tort claim. Zafarana, 724 F. Supp. 2d at 561; see
also In re Avandia Mktg., Sales, Practices & Prods. Liab.
Litig., Nos. 07-md-01871, 10-2401, 2013 WL 3486907, at *3 (E.D.
Pa. 2013); Tatum v. Takeda Pharm. N. Am., Inc., No. 12-1114,
2012 WL 5182895, at *4 (E.D. Pa. 2012).

      In this case, Plaintiff's unjust enrichment claim
rests on the following allegations:

      102. Defendant's conduct in enticing Plaintiff and
           putative class members to purchase the Misbranded
           Products through false and misleading advertising
           and packaging as described throughout this
           Complaint is unlawful because the statements

contained on Defendant's product labels are
untrue. Defendant took monies from Plaintiff and
members of the putative class for products
promised to be bearing the contested labeling
representations even though the Misbranded
Products did not conform to those
representations.

103. Defendant wrongfully secured a benefit from
Plaintiff and the putative class--their money to
purchase products that they believed had
healthful qualities the products actually did not
have--and it would be unconscionable for
Defendant to retain the funds paid by Plaintiff
and the putative class when the products did not
provide the advertised benefits.

104. Defendant has been unjustly enriched at the
expense of Plaintiff and the putative class as
result of Defendant's unlawful conduct alleged
herein, thereby creating a quasicontractual
obligation on Defendant to restore these ill-
gotten gains to Plaintiff and putative class
members.

105. As a direct and proximate result of Defendant's
unjust enrichment, Plaintiff and putative class
members are entitled to restitution, in an amount
to be proven at trial.

Compl. ¶¶ 102-05.

From these allegations, the unjust enrichment theory

that Plaintiff intends to pursue is unclear. Plaintiff's use of

terms like "false and misleading," "unlawful," "wrongfully

secured," and "unconscionable" smack of tort. See id. ¶¶ 102,

103. If Plaintiff intends to assert an unjust enrichment claim

based on the same unlawful or improper conduct that supports his

tort claims, Plaintiff's claim would fail because the Court has

dismissed Plaintiff's tort claims. See Steamfitters, 171 F.3d at

937. Plaintiff cannot use unjust enrichment to circumvent the
deficiencies in his tort claims.

On the other hand, Plaintiff also identifies "ill-
gotten gains" and "a quasicontractual obligation," which toll
the bell of quasi-contract. See Compl. ¶ 104. If Plaintiff
intends to proceed under a quasi-contract theory of unjust
enrichment, Plaintiff's claim could arguably serve as a stand-in
for his breach of contract claim that has otherwise failed. If
so, Plaintiff's quasi-contract theory of unjust enrichment would
seek to remedy the "wrongfully retained" aspect of the
transaction, and Plaintiff's other claims[10] would seek to remedy
the "wrongfully secured" aspect of the transaction.[11] See

---

[10]     At this juncture, only Plaintiff's breach of warranty
claim remains. The Third Circuit has colorfully described a
breach of warranty claim as "a freak hybrid born of the illicit
intercourse of tort and contract." Hahn v. Atl. Richfield Co.,
625 F.2d 1095, 1103 (3d Cir. 1980); see also Jerry Davis, Inc.
v. Md. Ins. Co., 38 F. Supp. 2d 387, 392 (E.D. Pa. 1999) ("[I]n
some contexts it is unclear whether breach of warranty claims
sound in contract or tort."). For example, a breach of warranty
claim may be brought with respect to a consumer good and in the
absence of privity. See 13 Pa. Cons. Stat. § 2313 (recognizing
the creation of express warranties by affirmation, promise,
description or sample); see also Kassab, 246 A.2d at 856
(abolishing requirement of privity of contract in warranty).

But it is not the nature of Plaintiff's breach of
warranty claim that is decisive. Rather, the Court focuses on
the nature of Plaintiff's unjust enrichment claim to assess its
sufficiency.

[11]     Of course, no more than one satisfaction in damages
would be permitted. Rossi v. State Farm Auto. Ins. Co., 465 A.2d
8, 10 (Pa. Super. Ct. 1983). And if Plaintiff were to succeed on

Mitchell, 729 A.2d at 1204 ("In determining if the doctrine applies, our focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."). The unjust enrichment claim would not be a "stand alone" claim.

But because the allegations in the complaint conflate the two theories, the Court cannot determine whether Plaintiff's unjust enrichment claim proceeds on the first (quasi-contract) or second (tort) theory. Under the circumstances, the Court will dismiss Plaintiff's unjust enrichment claim for failure to state a plausible claim for relief. Plaintiff, if he chooses, will be granted leave to amend the claim with clarification as to which species of unjust enrichment he seeks to assert.

6.   Injunctive relief

Finally, the Court reviews Plaintiff's request for injunctive relief. For standing to seek injunctive relief, a plaintiff must show that (1) "he is under threat of suffering 'injury in fact' that is concrete and particularized"; (2) "the

_____

his breach of warranty claim, Plaintiff will be unable to pursue an equitable remedy, which is only available where there is an inadequate legal remedy. See Douglas Laycock, The Scope and Significance of Restitution, 67 Tex. L. Rev. 1277, 1283 (1989) ("If defendant steals a hundred-dollar bill, he is unjustly enriched in the amount of one hundred dollars. But he has also committed a tort; indeed, it is the tort that makes his enrichment unjust. The tort damages are also one hundred dollars. If defendant is solvent, it will rarely matter whether plaintiff recovers one hundred dollars in damages for the tort or one hundred dollars in restitution of the unjust enrichment.").

threat must be actual and imminent, not conjectural or
hypothetical"; (3) "it must be fairly traceable to the
challenged action of the defendant"; and (4) "it must be likely
that a favorable judicial decision will prevent or redress the
injury." <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 493
(2009).

    "An injury-in-fact 'must be concrete in both a
qualitative and temporal sense.'" <u>Reilly v. Ceridian Corp.</u>, 664
F.3d 38, 42 (3d Cir. 2011) (internal citation omitted). When, as
in this case, prospective relief is sought, a plaintiff must
show that he is "likely to suffer future injury" from the
defendant's conduct. <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95,
105 (1983). The threat of injury must be "sufficiently real and
immediate." <u>Roe v. Operation Rescue</u>, 919 F.2d 857, 864 (3d Cir.
1990). "In the class action context, that requirement must be
satisfied by at least one named plaintiff." <u>McNair v. Synapse
Grp. Inc.</u>, 672 F.3d 213, 223 (3d Cir. 2012).

    The Third Circuit's decision in <u>McNair v. Synapse
Group Inc.</u>, 672 F.3d 213 (3d Cir. 2012), is particularly
instructive. In <u>McNair</u>, the Third Circuit held that former
magazine subscription customers with standing to bring claims
for monetary relief under the New Jersey Fraud Act lacked
standing to bring a claim for injunctive relief because they

36

could not demonstrate a likelihood of future harm. Id. at 225.
The court explained as follows:

> Because [the plaintiffs] are familiar with [the
> defendant's] practices as well as the various names
> under which it operates, it is a speculative stretch
> to say they will unwittingly accept a[n] . . . offer
> [from the defendant] in the future. But even if they
> did, they would only be harmed if they were again
> misled by [the defendant's] subscription renewal
> techniques, which would require them to ignore their
> past dealings with [the defendant]. In short, [the
> plaintiffs] ask us to presume they will be fooled
> again and again. While we cannot definitively say they
> won't get fooled again, it can hardly be said that
> [the plaintiffs] face a likelihood of future injury
> when they might be fooled into inadvertently accepting
> a magazine subscription with [the defendant] and might
> be fooled by its renewal tactics once they accept that
> offer.

Id. at 225 n.15 (emphasis in original). Therefore, the Third
Circuit concluded that the plaintiffs lacked standing to pursue
injunctive relief. Id. at 225-26; see also Stoneback v.
ArtsQuest, No. 12-3287, 2013 WL 3090714, at *1, 12 (E.D. Pa.
June 20, 2013) (concluding that injunctive relief was
unavailable where the defendants advertised commemorative beer
mugs as being made in Germany when the mugs were made in China,
because the plaintiffs "now know the origin of the steins and
mugs," so "it is difficult to discern how they would be injured
by future misrepresentations from defendants").

        Here, Plaintiff "seeks declaratory and injunctive
relief to ensure that Defendant removes any and all false or
misleading labels and advertisements relating to the Misbranded

Products and to prevent Defendant from making similar representations in the future." Compl. ¶ 5. But like the plaintiffs in McNair, Plaintiff now knows the true nature of Defendant's alleged misrepresentations--i.e., Defendant's products are not "all natural" as their labels claim. Because Plaintiff is now familiar with Defendant's labeling practices, it is a "speculative stretch" to say Plaintiff would "unwittingly accept" the labels' assertions in the future. McNair, 672 F.3d at 225 n.15.

Plaintiff contends that "[t]here are still thousands of persons fitting the class description that may suffer future harm." Pl.'s Resp. 27. But Plaintiff's vague and unsubstantiated assertion that "thousands of persons . . . may suffer future harm," id. (emphasis added), contradicts the requirement that the threat of future injury be "concrete in both a qualitative and temporal sense," Reilly, 664 F.3d at 42, as well as "sufficiently real and immediate," Roe, 919 F.2d at 864. Therefore, Plaintiff does not have standing to pursue injunctive relief on behalf of himself or the class.

Some courts have recognized that strictly enforcing the future injury requirement could, in effect, restrict the availability of injunctive relief in consumer fraud cases. See, e.g., Robinson v. Hornell Brewing Co., No. 11-2183, 2012 WL 1232188, at *7 (D.N.J. Apr. 11, 2012) ("By necessity, such cases

can involve only identified plaintiffs who have become aware of
the misleading nature of the label. . . . While this Court's
holding is controlled by the clear precedent of <u>McNair</u> on this
point, it is to be hoped that future Third Circuit opinions will
clarify whether this is the intended result of the <u>McNair</u>
holding."). But regardless of <u>McNair</u>'s wisdom, this Court is
bound by it. Thus, Plaintiff does not have standing to pursue
injunctive relief in this case.

Moreover, injunctive relief is inappropriate because
Plaintiff he has an adequate remedy at law, which "belies a
claim of irreparable injury." <u>Frank's GMC Truck Ctr., Inc. v.</u>
<u>Gen. Motors Corp.</u>, 847 F.2d 100, 102 (3d Cir. 1988). As
Defendant alleges, "[t]here is no reason to believe damages are
not an adequate remedy for the economic loss Plaintiff alleges
he incurred." Def.'s Mem. 27. The cost of a bag of potato chips
alone does not amount to irreparable harm. As such, injunctive
relief is unavailable.

**IV.  MOTION TO STRIKE CLASS ALLEGATIONS**

The Court next considers Defendant's motion to strike
Plaintiff's class allegations.

A.  <u>Legal Standard</u>

"The court may strike from a pleading an insufficient
defense or any redundant, immaterial, impertinent, or scandalous

matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to
strike is to clean up the pleadings, streamline litigation, and
avoid unnecessary forays into immaterial matters." McInerney v.
Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D.
Pa. 2002). "In general, federal courts disfavor motions to
strike an opponent's pleading under Fed. R. Civ. P. 12(f)
because this drastic remedy 'often is sought by the movant
simply as a dilatory or harassing tactic.'" Zarichny v. Complete
Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 615 (E.D. Pa.
2015) (quoting 5C Charles Alan Wright & Arthur R. Miller,
Federal Practice & Procedure § 1380 (3d ed. 2014)).

Under Federal Rule of Civil Procedure 23(d)(1)(D), a
court adjudicating a class action may "require that the
pleadings be amended to eliminate allegations about
representation of absent persons and that the action proceed
accordingly." Fed. R. Civ. P. 23(d)(1)(D).

"Dismissal of class claims prior to discovery and a
motion to certify the class by plaintiff is the exception rather
than the rule." Luppino v. Mercedes-Benz USA, LLC, No. 09-5582,
2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013) (collecting
cases). Granting a motion to strike under Rule 23(d)(1)(D)
before class discovery is proper only "where the complaint
itself demonstrates that the requirements for maintaining a
class action cannot be met" and "no amount of discovery will

40

demonstrate that the class can be maintained." <u>Goode v.</u>
<u>LexisNexis Risk & Info. Analytics Grp., Inc.</u>, 284 F.R.D. 238,
245 (E.D. Pa. 2012).

As such, district courts in the Third Circuit
typically hold that "motions to strike class allegations are
premature and that the proper avenue is to oppose the
plaintiff's motion for class certification." <u>Korman v. Walking</u>
<u>Co.</u>, 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007) (collecting
cases). Rather, the class certification stage is better suited
for this Court to address a motion to strike class allegations
because "a district court must conduct a 'rigorous analysis'" to
determine whether Rule 23's requirements are satisfied and "'may
delve beyond the pleadings to determine whether the requirements
for class certification are satisfied.'" <u>Landsman & Funk PC v.</u>
<u>Skinder-Strauss Assocs.</u>, 640 F.3d 72, 93 (3d Cir. 2011) (quoting
<u>In re Hydrogen Peroxide Antitrust Litig.</u>, 552 F.3d 305, 309, 316
(3d Cir. 2008)).

B.   <u>Discussion</u>

Defendant does not contest Plaintiff's ability to
satisfy the four prerequisites of a class action provided in
Rule 23(a), nor does it contest Plaintiff's ability to satisfy
the superiority requirement. Rather, Defendant challenges

Plaintiff's ability to satisfy Rule 23(b)(3)'s predominance
requirement. Def.'s Mem. 28.

The predominance requirement dictates that for
"questions of law or fact common to class members predominate
over any questions affecting only individual members." Fed. R.
Civ. P. 23(b)(3). The underlying claim's elements must be
"capable of proof at trial through evidence that is common to
the class rather than individual to its members." In re Hydrogen
Peroxide, 552 F.3d at 311–12. Accordingly, "'[i]f proof of the
essential elements of the cause of action requires individual
treatment, then class certification is unsuitable.'" Id. at 311
(quoting Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
259 F.3d 154, 172 (3d Cir. 2001), as amended (Oct. 16, 2001)).

Here, justifiable reliance is an essential element of
Plaintiff's UTPCPL, fraudulent misrepresentation, and negligent
misrepresentation claims. Hunt v. U.S. Tobacco Co., 538 F.3d
217, 219 (3d Cir. 2008) (UTPCPL claim); Tran v. Metro. Life Ins.
Co., 408 F.3d 130, 135 (3d Cir. 2005) (negligent
misrepresentation claim); Colaizzi v. Beck, 895 A.2d 36, 39 (Pa.
Super. Ct. 2006) (common law fraud claim). The very nature of
the justified reliance inquiry is highly fact-specific, Toy v.
Metro. Life Ins. Co., 928 A.2d 186, 207–08 (Pa. 2007), which may
eventually present an insurmountable burden to class
certification in this case.

At least one district court in this Circuit has held
that the justifiable reliance element of a misrepresentation
claim presents grounds for striking the class allegations before
the class certification stage. Davis v. Bank of Am., N.A., No.
13-4396, 2016 WL 427049, at *6 (E.D. Pa. Feb. 3, 2016). In
Davis, the plaintiffs filed a putative class action against a
bank and law firm on behalf of themselves and certain real
estate owners, alleging that the putative class paid
unauthorized attorneys' fees in reliance upon the defendants'
foreclosure complaints, which violated the UTPCPL. Id. at *1.

The defendants moved to strike the UTPCPL class
allegations prior to discovery, and the district court granted
the motion. The court reasoned that "an individual may or may
not make a payment following his or her receipt of a foreclosure
complaint for various reasons." Id. at *6. The court reasoned
that permitting the plaintiffs' class action to proceed would
require the court to "assume that [each] putative plaintiff read
the foreclosure complaint and believed it to be true, and
further assume that any partial payment made by the putative
plaintiff was meant to be applied to the attorneys' fees listed
and not to any other amounts." Id. at *6. The court stated that
"[a]llowing certification to proceed on the mere proof of
payment would, in sum, amount to an outright presumption of
justifiable reliance." Id. Therefore, the court concluded that

the individual inquiries required for the justifiable reliance element rendered the misrepresentation claim "unsuitable for class adjudication." Id.

Here, the Court declines to follow in Davis's footsteps. "There is no good reason for this case not to proceed down the normal path, i.e., with the Court setting a deadline for Plaintiff to file a motion for class certification and the parties litigating the propriety of maintaining the action as a class under the traditional Rule 23(c) rubric." Korman, 503 F. Supp. 2d at 763.

An individual may or may not buy a snack product based on its label's representations. There may be a multitude of reasons for a consumer's purchase, such as flavor, price, or an appealing commercial mascot. And courts have recognized that this type of validity renders a fraud claim generally inappropriate for class action resolution. See Dawson v. Dovenmuehle Mortg., Inc., 214 F.R.D. 196, 201 (E.D. Pa. 2003).

But to rule on the motion to strike at this stage would risk eviscerating the class certification process as a whole. Indeed, the cases on which Davis relies arose in the context of either a motion for class certification or decertification. See Davis, 2016 WL 427049, at *5 (discussing Markocki v. Old Republic National Title Insurance Co., No. 06-2422, 2015 WL 3421401, at *3 (E.D. Pa. May 27, 2015); Cohen v.

Chicago Title Insurance Co., No. 06-873, 2013 WL 842706, at *2
(E.D. Pa. Mar. 7, 2013); Slapikas v. First American Title
Insurance Co., 298 F.R.D. 285, 297 (W.D. Pa. 2014)).

Ultimately, Plaintiff will bear the burden of
demonstrating that questions of law or fact common to class
members predominate over any questions affecting only individual
members. Fed. R. Civ. P. 23(b)(3). But such questions are more
appropriately addressed with a developed factual record after
the class discovery stage. See Goode, 284 F.R.D. at 245 ("'[T]he
shape and form of a class action evolves only through the
process of discovery.'" (quoting Abdallah v. Coca-Cola Co., No.
98-3679, 1999 WL 527835, at *1 (N.D. Ga. July 16, 1999)).
Therefore, Defendant's motion to strike class allegations will
be denied without prejudice.

## V.    CONCLUSION

For these reasons, the Court will grant Defendant's
motion to dismiss as to Plaintiff's UTPCPL, fraudulent
misrepresentation, negligent misrepresentation, breach of
contract, unjust enrichment, and injunctive relief claims. These
claims will be dismissed without prejudice. The Court will deny
without prejudice Defendant's motion to strike the class
allegations as premature. Only Plaintiff's breach of warranty
claim remains. An appropriate order follows.